39 C.C.P.A. (Patents)

## ANDREWS v. WICKENDEN.

### Patent Appeal No. 5840.

United States Court of Customs
and Patent Appeals.

Feb. 18, 1952.

Watson, Johnson, Leavenworth & Blair, New York City (David A. Woodcock, New York City, and Gardner J. O'Boyle, Washington, D. C., of counsel), for appellant.

Adams, Forward & McLean, New York City (Lawrence D. Dibble, Washington, D. C., Curt Von Boetticher, Jr., and R. T. McLean, New York City, of counsel), for appellee.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON and WORLEY, Judges.

O'CONNELL, Judge.

This appeal was taken by the junior party from an adverse decision of the Board of Interference Examiners of the United States Patent Office awarding to appellee, Wickenden, priority of invention of the subject matter defined by the count in issue, which reads as follows: "In a process for the conversion of an acid sludge resulting from treatment of a petroleum distillate with sulphuric acid into an active carbon, the improvement which comprises the step of distilling the acid sludge at a temperature below about 750°F., in combination with the step of using an atmosphere of steam while thereafter heating the resulting material above 750°F. for further carbonization and activation."

The interference involves a patent for "Processing Acid Sludge," granted January 15, 1946, upon an application filed by appellant's assignor, Andrews, on February 14, 1944, and assigned by him on the same date to appellant, Wilson Carbon Company, Inc., of New York City; and appellee's application for a patent for the "Treatment of Waste Oil Refinery Sludge Coke," which application, serial No. 497,559, was filed August 5, 1943, approximately six months earlier than Andrews' filing date. Andrews died March 3, 1947. The interference was initiated February 18, 1948,

and all proceedings therein for the junior party have been conducted by appellant, the inventor's assignee. Both parties took testimony and submitted briefs, but only appellant was represented at the final hearing.

Appellee Wickenden copied appellant's patented claim 14 on November 22, 1947 for the purpose of provoking the interference. That date was more than one year after the said patent to appellant had issued.

During the motion period, namely on June 10, 1948, appellant, among other things, moved on the ground of estoppel to dissolve the interference under R.S. 4903, 35 U.S.C.A. § 51, and Rule 94 of the Rules of Practice of the Patent Office, each of which then provided in identical terms as follows: "No amendment for the first time presenting or asserting a claim which is the same as, or for substantially the same subject matter as, a claim of an issued patent may be made in any application unless such amendment is filed within one year from the date on which said patent was granted."

There is no dispute on the point that when the party Wickenden amended his application on November 22, 1947 by incorporating therein the claim which he had copied from appellant's issued patent, such amendment had not been filed by the appellee within one year from the date on which said patent was granted to appellant.

Appellant contended that the limitation of the statute, as well as that set forth in Rule 94, created an estoppel against the filing of appellee's amendment because prior to his assertion of the copied claim, appellee had never before presented a claim which defined the first step of the count; namely, "distilling the acid sludge at a temperature below about 750°F." to produce the intermediate coke product.

The tribunals of the Patent Office denied the motion to dissolve for the stated reason that before the expiration of the one-year period, appellee had asserted in his application a claim for substantially the same subject matter as that defined by the count, citing Cryns v. Musher, 161 F.2d 217, 34 C.C.P.A., Patents, 963. Both tribunals found in reaching their conclusions that while appellee's original process claims did not expressly include the first step of pro-ducing the coke product by the distillation of acid sludge at the limited temperature called for by the count, nevertheless that step was necessarily inherent and claimed in the following quoted language which constitutes the introductory matter in each of those claims: "In the method of treating waste oil refinery sludge coke to convert it into a highly useful article of commerce, the improvement which comprises heating granules of the * * * coke * * *."

During the prosecution of his application by the inventor Andrews, the subject matter of the count was defined as follows by the Primary Examiner: "Applicant's invention resides in discovering the criticality of distilling the acid sludge, at temperatures below 750°F. in combination with the practice of using steam when this material is heated above 750°F. for further carbonization and/or for activation. Applicant's acceptable showing by affidavit is directed to this combination, and it is on the basis of this showing that claims 2–14, inclusive would be [and were]. allowed. * * *"

The Board of Interference Examiners was more specific on certain other points and described the invention of the count as follows: "The involved invention relates to a process for converting acid sludge into active carbon. The acid sludge employed occurs as a by-product in the treatment of petroleum distillates with sulfuric acid, as commonly practiced in oil refining. The invention as defined by the single count requires two steps, the first of which involves distilling the acid sludge at a temperature 'below about 750°F.' The second step involves heating the resultant residue above 750°F. in an atmosphere of steam for 'further carbonization and activation.'"

The board approved the examiner's rejection of appellant's contention on the ground of estoppel and on that question expressed its position as follows: "The claims, of course, [appellee's original process claims] are broader than the count in issue in that they lack the temperature limitation, but manifestly an operative distilling temperature is inherently embraced therein. It is unimportant, as we view it, that temperatures exceeding 750°F. may

produce inoperative cokes, so long as there is disclosed in Wickenden the *prima facie* operative step of producing the coke in a manner satisfying the count. In these circumstances, to impute the claiming of inoperative matter in order to destroy the plain intention in Wickenden's original claims to define a process for producing highly absorptive carbon is believed unjustified."

Appellant's respective petitions for rehearing and reconsideration not only of the decision of the examiner but also of the board on the question of estoppel were denied by both tribunals on the ground that appellant's contentions on that point had no merit.

The described sludge coke, it may be noted, was regarded as a relatively useless residue, sometimes employed as fuel. One of the objects of the invention of the count was to provide a method of converting the acid sludge into a highly valuable article of commerce.

While the introductory clause of appellee's original process claims was relied upon as the basis for the contention that those claims define substantially the same invention as the invention of the count, appellee also contends that in his specification he "has disclosed the temperature range of the first step of count at least once in very definite language [550°F.] and twice by clear implication in view of his express disclosures and the state of the art."

The examiner in his decision on appellant's petition for rehearing and reconsideration, among other things, stated: "the only teaching of [the] party Wickenden as to a distilling temperature is a temperature below the limits of the count, namely, about 550°F. Party Wickenden has shown two specific methods for converting acid sludge into sludge coke by heating at such temperature; an older method using hot combustion gases, and a newer method using two kilns."

On that point, appellant challenges here, as it did below, the validity of the examiner's quoted statement of fact and urges that in one of the methods described in appellee's specification for treating the acid sludge, appellee disclosed a temperature of upwards of 932°F.

The United States Court of Customs and Patent Appeals has recently held that the limitation of a process claim which calls for the step of heating a substance, without enumerating the degree of temperature required to effect the desired or operative result, does not satisfy the statutory degree of particularity required by the statute.[1] This court has also recently held that claims do not meet the statutory requirement of particularity if one skilled in the art must have recourse to the specification for limitations which are not set out in the claims.[2]

Controlling questions of law here involved have been further explained and summarized more specifically by this court in the following three cases: Kropa v. Robie, 187 F.2d 150, 38 C.C.P.A., Patents, 858; In re Frey, 182 F.2d 184, 37 C.C.P.A., Patents, 1052; In re Draeger, 150 F.2d 572, 32 C.C.P.A., Patents, 1217. For example, the board in holding that appellee's original process claims, although broader than the count in issue, manifestly embraced a *prima facie* operative distilling temperature, unduly extended the doctrine of Cryns v. Musher.[3] The true significance of the law of that case was explained by this court in the case of In re Frey, supra [182 F.2d 186], to the following effect: "We think it is too clear to require discussion that in the use of the word 'covering' in the case of Cryns v. Musher, supra, there was no intention to hold that a broad claim which merely covers the invention of a patent claim is a claim to substantially the same invention as the patent claim so as to avoid estoppel. A careful analysis of our decision in that case plainly discloses that in order to come within the exception of Rule 94 one must have been claiming or asserting a claim or claims the same as, or for substantially the same subject matter as the claim or claims of the issued patent. * *"

1. In re Patrick, 189 F.2d 614, 38 C.C.P.A., Patents, 1105. See also R.S. 4888, 35 U. S.C.A. § 33.

2. In re Cresswell, 187 F.2d 632, 38 C.C.P. A., Patents, 917.

3. Cryns v. Musher, 161 F.2d 217, 34 C.C.P. A., Patents, 963.

732

On the point as to what constitutes inherency, or *"prima facie"* inherency, and the effect of overlapping ranges in a contested claim, this court in the case of In re Draeger, supra [150 F.2d 574], expressed the following pertinent rules of law: "Inherency does not mean that a thing might be done, or that it might happen, as in the instant case, one out of twenty odd times; but it must be disclosed, if inherency is claimed, that the thing will necessarily happen. * * * The mere fact that appellants' broad range overlaps at one end does not make it a disclosure of the critical limitations in the appealed claims. Appellants' application as filed fails to teach the gist of the invention here involved, and they should not now be permitted, on said disclosure, to extract from an issued patent, claims obviously based upon the disclosure of a critical element not even hinted at in their specification. To hold otherwise would encourage rather than discourage indefinite, broad disclosures and thus prevent inventions relating to critical matters, as does the one involved here, from being taught to the public."

■ Kropa v. Robie, supra, among other things, reaffirmed the principle of law uniformly applied by this court to the effect that the counts in an interference proceeding are to be given the broadest interpretation which their language reasonably will permit; bearing in mind, however, that express limitations defined by the counts are not to be disregarded but must be considered material.

■ On the facts presented by the record in the instant case we are of opinion that appellee, during the critical period, was not claiming the same or substantially the same invention defined by the count and was estopped from asserting the amendment here in issue by reason of the mandate of the statute and of Rule 94 hereinbefore set forth. In view of that conclusion it is not necessary to consider other findings made by the board.

The decision of the Board of Interference Examiners, for the reasons hereinbefore stated, is reversed.

Reversed.