41 C.C.P.A.(Patents)

## EMERSON v. BEACH.
### No. 6062.

United States Court of Customs and Patent Appeals.

June 24, 1954.

Rehearing Denied Sept. 15, 1954.

Stephen Cerstvik, Teterboro, N. J. (Herbert L. Davis and Emory C. Naylor, Washington, D. C., of counsel), for appellant.

Herbert H. Thompson and Reginald V. Craddock, Great Neck, L. I., N. Y., for appellee.

Before JOHNSON, WORLEY, COLE, and JACKSON (retired), Judges.

COLE, Judge.

Appealing from a decision of the Board of Patent Interferences of the United States Patent Office, John F. Emerson, senior party in interference, hereinafter referred to as appellant, has assigned error by said board in its award of priority of the inventive subject matter contained in interference counts 1, 2, and 3 to the junior party, Lennox F. Beach, hereinafter referred to as appellee.

The interference was declared between Patent No. 2,476,273, issued to appellee on July 19, 1949, based on an application filed September 17, 1942 for "Apparatus Sensitive To Magnetic Fields," and appellant's pending application, Serial No. 151,402, filed March

23, 1950 as a continuation-in-whole of an application, Serial No. 445,102, filed May 29, 1942, for "Electromagnetic Induction Device."

The counts in issue relate to improvements in a flux valve used in connection with an earth inductor magnetic compass system. Counts 1 and 3 broadly define the invention while count 2 is more specific and of limited scope. All of the counts were copied by appellant from the appellee's patent, wherein they originated some 19 months subsequent to the date of issuance of said patent. They read as follows:

"1. A flux valve for use in a remote reading compass system comprising three relatively angularly disposed inductors each including a pair of laterally spaced, elongated core members of permeable magnetic material, means for producing a pulsating flux in the core members of each inductor, said flux flowing in the members of each inductor in respectively simultaneously opposite directions, and pick-up windings associated with each inductor and respectively comprising convolutions each encircling both core members of the inductors whereby potentials of a frequency equal to the periodicity of said varying flux will be substantially balanced out in said pick-up windings while alternating voltages produced through interaction between said inductors and an external field and of a frequency twice that of the periodicity of said flux will be provided as a signal output by said pick-up windings, the pick-up windings of the inductors being connected together in polyphase fashion.

2. A flux valve for use in a remote reading compass system comprising three relatively angularly disposed inductors each including a pair of laterally spaced, elongated core members of permeable magnetic material, a coil on each core member adapted when energized from a source of periodically varying electrical energy to produce periodically varying flux in said core members, said flux flowing in said members in respectively, simultaneously opposite directions, and pick-up windings associated with each inductor and respectively comprising convolutions each encircling both core members of the inductors whereby potentials of a frequency equal to the periodicity of said varying flux will be substantially balanced out in said pick-up windings while alternating voltages produced through interaction between said inductors and an external field and of a frequency twice that of the periodicity of said flux will be provided as a signal output by said pick-up windings, the pick-up windings of the three inductors being Y connected together across a three terminal output.

3. A flux valve of the character recited in count 1 in which the pick-up windings are Y connected together across a three terminal output."

As junior party in the proceedings below, appellee was required to establish his case by a preponderance of the evidence. As indicated by its decision, the Board of Patent Interferences was of the opinion that appellee had satisfactorily discharged that burden and, in so concluding, set forth in detail the reasons for its award of priority to the appellee. In reviewing that action, we find it necessary, in the light of our own conclusions, to discuss only briefly, and somewhat generally, the factual events preceding the declaration of the instant interference.

It appears from the record that in 1935 appellee and one Purves associated themselves together in an effort to seek inventive improvements in a particular type of earth inductor compass (which required no rotating or vibrating mechanical parts) patented by the

inventor Antranikian (Patent No. 2,-047,609). Prior to the issuance of that patent in 1936, appellee and Purves, by agreement with Antranikian, had secured permission to investigate further the possibilities of the latter's device and, after considerable laboratory work was completed, a joint application for a patent was filed on March 28, 1941 by the said appellee and Purves for "Magnetic Field Responsive Device," claimed to be an improvement over Antranikian, the patent thereon issuing August 28, 1945 (Patent No. 2,383,-460). At the time of the filing of the aforesaid joint application, and for several years previous thereto, appellee and Purves had been working with the engineering staff of the Sperry Gyroscope Company, hereinafter identified as Sperry, under an agreement whereby Sperry was to aid in the development of the devices then under consideration by appellee and Purves. During the existence of the agreement with Sperry, appellee made sole application, on September 17, 1942, for the patent involved in this interference, which application was co-pending with the joint appellee-Purves application.

As to broad counts 1 and 3, the board found from the evidence that an actual reduction to practice of the invention therein defined had been proved by appellee as of May, 1941, a date prior to the earliest dates of conception and reduction to practice alleged by appellant. In awarding such date, the board believed that the device shown in appellee's Exhibit 6, a drawing of several types of flux valves made in August of 1940, broadly satisfied the terms of counts 1 and 3 and that said device had actually been reduced to practice at the stated time by properly corroborated flight tests conducted by Sperry and appellee. While the board was of the opinion that counts 1 and 3 were also readable on the disclosure of the joint appellee-Purves patent 2,383,460, it specifically rejected, for reasons unnecessary to discuss herein, appellee's contention that he should be entitled to rely thereon for a constructive reduction to practice. No actual reduction to practice of the invention set forth in limited count 2 was claimed by appellee and he was accordingly restricted to the filing date of his individual application for a constructive reduction to practice which, as previously noted, was subsequent to that of appellant.

In opposing the foregoing conclusions of the board with respect to the award of priority to appellee as to broad counts 1 and 3, the appellant takes the position that appellee must be limited to his filing date of September 17, 1942 for a constructive reduction to practice because the improved flux valve structure set forth in appellee's patent in interference was specifically designed to correct defects in, and is therefore materially different from, the structure disclosed in either appellee's Exhibit 6 or the joint appellee-Purvis patent. Appellant urges that the subject matter of appellee's Exhibit 6 related entirely to what was disclosed in the joint patent and is consequently to be found in the prior art. In effect, appellant contends that the flux valve flight tests of May, 1941, were of a device already patented jointly to appellee and Purves, as an entity, and cannot inure individually to appellee's benefit in the instant controversy. It is further urged that even assuming that counts 1 and 3 are broadly readable on the device flight tested in May of 1941, such counts clearly disclose an improvement over the prior patented art and therefore should not be given a construction broader than the invention actually disclosed therein.

Appellee, on the other hand, states that while there is an overlapping of disclosure between the appellee-Purves joint patent 2,383,460 and appellee's sole patent presently in interference, the improved flux valve of the counts under discussion is not covered by said joint patent because it is not claimed therein, the invention of such counts

being his individual property, properly to be claimed independent of Purves. Thus, appellee argues that the board correctly held that the devices made and reduced to practice in May of 1941 in accordance with appellee's Exhibit 6, which are substantially like those shown in the joint patent, inured to his individual benefit.

As an additional ground for the award of priority to appellee as to counts 1 and 3, and as the sole ground for such award as to count 2, the board determined that appellant was barred from making the counts in interference because he had not copied such counts or made any claims to substantially the same subject matter within one year from the date of issuance of appellee's patent, as was required by R.S. 4903, 35 U.S.C. § 51 (1946 ed.), the statute in force prior to enactment of the new Patent Codification Act of 1952.[1] In so finding, the board made it clear that its action was not predicated on a lack of disclosure in appellant's application to support the counts because appellant did, in fact, have adequate disclosure. Instead, the board's holding was based on estoppel by statute which, as indicated above, presented to the board a question directed solely to a proper determination of what appellant was claiming prior to a year after issuance of appellee's patent and whether such claimed subject matter bore, as a matter of law, sufficient relationship to the invention defined in the counts involved in interference for appellant to be entitled to assert the same. This is a matter ancillary to priority which, if the provisions of the statute be deemed of affirmative application, as decided by the board, is *per se* decisive of the issues herein, compelling an award of priority to appellee.

■ ■ While we are of the opinion that the appellant is estopped to make any of the counts in interference, it is thought that the background against which the estoppel by statute is found to operate against the appellant was best introduced by briefly setting forth, as we have done, the reasons behind the board's holding that appellee was entitled to the award of priority, as to counts 1 and 3 (based on prior conception and reduction to practice), as well as broadly outlining the positions taken by appellant and appellee with respect to such holding. In the view we take, however, i. e., that appellant is estopped, it is unnecessary for us to express any conclusions relative to the board's action regarding its award to appellee based on prior conception and reduction to practice of the subject matter of counts 1 and 3.

In discussing appellee's motion to dissolve the interference on the ground that appellant was estopped to make the counts, the Primary Examiner stated that appellant's claims 1, 2 and 4 of his involved application, Serial No. 151,-402, corresponding to claims 2, 3 and 5 of his earlier filed parent application, Serial No. 455,102, were such as indicated that appellant was claiming substantially the same subject matter that is covered by the counts in interference all during the pendency of the appellee's patent. The Board of Patent Interferences, however, specifically reversed the position taken by the Primary Examiner and, in so doing, stated as follows: "Claims 1, 2 and 4 of the Emerson [appellant] application relate to an electromagnetic induction device or magnetic pick-up, without any statement as to use in a compass or otherwise, which consists of a plurality of units, each having a pair of separate spaced parallel core members carrying windings which are adapted to energize the core members in

1. The Patent Codification Act of 1952, 35 U.S.C. § 135 (1952 ed.), relating to interferences, states, in part:

"A claim which is the same as, or for the same or substantially the same subject matter as, a claim of an issued patent may not be made in any application unless such a claim is made prior to one year from the date on which the patent was granted."

opposite directions, and an output winding wound about both of said coil members as though they were a single member. There is no statement in these claims, or any of the claims that have been prosecuted in either of the Emerson applications at any time before the copying of the claims from the Beach [appellee] patent in which any claim was made to windings connected either in polyphase relation, or specifically, to a 'Y' connection which is a form of a polyphase connection. Claims 1, 2 and 4 of Emerson are similar to count 2 involved herein, with the exception of the 'Y' connection, and are more specific than counts one and three in that the means of magnetizing the core is by means of coils whereas in counts one and three the mode of magnetizing the core elements is more broadly stated so that it would include either the specific means shown by the Purves and Beach patent or the specific coil means shown by the Beach patent or the Emerson application. It is noted that counts one and three include the manner in which they are connected.

"We do not believe that Emerson would be barred to contest the interference if the only weakness in his case has been the fact that he had always claimed the subject matter specifically rather than broadly; this is a different situation than where a party had claimed the subject matter only broadly and contended as a result of this, that he had been claiming substantially the same subject matter which was definitely more restricted. However, we do believe that the fact that Emerson had never claimed any kind of a polyphase connection brings this case under the doctrine laid down * * * in Andrews v. Wickenden, 194 F.2d 729, 39 C.C.P.A., Patents, 860. The interconnection of the pick-up windings is such that the flux valve is adapted for use in a remote reading compass system, and thus, it would appear that the expressed limitations are material limitations which cannot be ignored. It is well settled that ordinarily, all limitations in the count of an interference, especially those which are copied from a patent are material and may not be ignored. Therefore, it is held that Emerson is barred to make the counts here involved."

In attacking the foregoing reasoning by the Board of Patent Interferences, the appellant, petitioning for reconsideration of said board's decision, urged that his application in interference clearly taught the gist of the invention of the counts; that each element defined by such counts was included in certain of the allowed claims of his application in interference when properly read in the light of the disclosure of such application; that, more specifically, the polyphase connection, considered by the board to be an essential element of the combination, is shown in his application drawings and sufficiently described in such application (the specification and drawings of appellant's application in interference, as well as that of appellee's patent, are most satisfactorily detailed in their respective descriptions); and that, therefore, the rule in Andrews v. Wickenden, supra, was erroneously applied by the board when, in fact and law, the rule in Cryns v. Musher, 161 F.2d 217, 34 C.C.P.A., Patents, 963, was applicable, as appellant has been claiming substantially the same invention as that defined in the interference counts since the filing date of his parent application.

Addressing itself to appellant's argument, as set forth in the petition for reconsideration, the Board of Patent Interferences clarified its position by again stating that its holding of estoppel was not based on an insufficiency of disclosure in appellant's application to support the counts, but instead was predicated on the belief that the combination of pick-up coils connected in polyphase fashion, defined by the counts, is a positive limitation which appellant had not claimed within a year of the issuance of appellee's patent. Di-

recting its attention to the holdings in the cited cases, the board stated: "Cryns v. Musher stands for the proposition that estoppel does not lie if claims had been presented at any time within a year of the issuance of the patent to substantially the same subject matter as claims copied from the patent. Andrews v. Wickenden stands for the proposition that broad claims which may, because of their breadth, cover more specific claims do not satisfy the statutory requirement that substantially the same invention must have been claimed within the year in order that claims may be copied from a patent. In our opinion Andrews v. Wickenden applies in this case."

During oral argument before us, which was augmented by blackboard illustrations, and in his brief on appeal, appellant has urged most emphatically that the interference counts be construed as directed to the same subject matter as that defined by allowed claim 1 of his application in interference. In this respect, appellant contends that the polyphase connection is not a positive element of the combination claimed in the counts, "but instead the counts in issue are properly construed as including 'pick-up windings' qualified by the expression 'being connected together in polyphase fashion' or 'Y connected' to develop merely the intended use or purpose of the 'windings' and not to supply a 'polyphase connection' as an element of the claimed combination." It is appellant's further position that even assuming such polyphase connection to be properly an element of the invention, claim 1 of his application in interference is directed to substantially the same subject matter of invention as counts 1, 2, and 3.

We have carefully considered the opinion of the Board of Patent Interferences in the light of the foregoing contentions advanced by the appellant. While greater particularity concerning appellant's position could be set forth, it would not effect a change in our agreement with the board's view that appellant must be held to be barred by statute from asserting the counts in interference. We feel that the limitation in question is an essential and material feature of the counts and that appellant has not claimed such element within the statutory period. We further agree with the board that the rule in Andrews v. Wickenden, supra, is properly of application herein, and we are in full accord with the following from appellee's brief which, in our opinion, convincingly demonstrates the futility of appellant's argument:

"In his brief, Emerson [appellant] strongly attacks this holding [of statutory estoppel] on the ground that the polyphase or Y connection as claimed is not a positive element of the counts in the sense that it is not a separate and distinct physical structure. To the contrary, it would appear obvious, in view of the countless patents containing claims covering electrical circuitry per se, that the manner in which the pick-up windings are electrically interconnected may with certainty constitute a material part of the physical makeup of the device, particularly where by such interconnection a distinct improvement is achieved in rendering it possible to actuate a selsyn or other polyphase synchro repeater directly from the output of the flux valve, thereby constituting a complete compass. Emerson is unable to point to any claim presented by him prior to the expiration of the one year after the issuance of the Beach [appellee] patent which recites this structure.

"Such particular structure is not only recited in the counts, but is recited as one of the main objects and improvements of the Beach invention, which fact seems to be completely ignored by Emerson. Thus, the Beach patent recites in column 2, lines 40 to 54:

" 'It is the primary object of this invention to provide a flux valve, or an electrical inductor device, having three core legs of permeable magnetic material, an exciting winding, and pickup coils associated with the respective core legs, the pickup coils being Y connected in a three-circuit alternating output whereby the device will function, through interaction with a unidirectional magnetic field to *provide a three-circuit, variable alternating potential output similar to that of a Selsyn transmitter* which is adapted to be used in reproducing the position of the core legs in the magnetic field by connecting the output of the device to an induction device of the Selsyn type.' [Italics quoted.]

\* \* \* \* \* \*

" \* \* \* An inspection of \* \* \* claim 1 [of appellant's application in interference] will show that it calls for a plurality of units (any number more than one) arranged in a predetermined geometrical relation and thereafter the claim only describes the structure (the double core and manner of winding) of one of its units. It does not describe any output connections whatever. \* \* \* More specifically, firstly the prior claim does not designate the number of units to be employed, whereas the counts specifically call for a *three-legged* flux valve. Secondly, it does not call for a polyphase or Y electrical connection, or, for that matter, for any type of interconnection whatever of the signal pick-up windings, whereas the counts all recite a particular manner of electrical interconnection of the pick-up windings, i. e., either polyphase or in Y. By providing three legs and connecting the pick-up windings in polyphase or Y fashion, the flux valve then constitutes a transmitter which is adapted for connection directly with a selsyn-like repeater motor or signal transformer to actually give compass heading around the 360° card, \* \* \*"

[Italics quoted.]

For the reason that appellant is estopped to assert the counts in interference, the decision of the Board of Patent Interferences is affirmed.

Affirmed.

JACKSON, J., retired, recalled to participate herein in place of GARRETT, C. J.