45 C.C.P.A. (Patents).
**Matter of the Application of
Walter D. TEAGUE, Jr.
Patent Appeal No. 6306.**

United States Court of Customs
and Patent Appeals.
April 11, 1958.

Rehearing Denied May 2, 1958.

Herbert L. Davis, Teterboro, N. J. (Emory C. Naylor, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Judges.

RICH, Judge.

This appeal is from a decision of the Patent Office Board of Appeals, rejecting claims 8, 9, 10 and 15 of appellant's application No. 130,157, filed November 30, 1949, for "Oil Cooler Emergency By-Pass Valve," as unpatentable over the prior art. Nine claims stand allowed.

The claims on appeal read as follows (all emphasis being ours):

"8. A by-pass valve means comprising a casing, a longitudinal bore in said casing, a first inlet and outlet communicating with said bore, a second inlet and outlet communicating with said bore, a plunger slidably mounted in said bore and constructed and arranged to afford, in one position, thereof, communication between said first inlet and outlet and said second inlet and outlet, *an orifice in each of said inlets*, and

*means responsive to flow through one of said inlet orifices* for moving said plunger to a second position whereby communication between said first inlet and outlet and said second inlet and outlet is closed and communication between said first inlet and said second outlet is established.

"9. In a pressurized lubricating system including an oil cooler having delivery and return conduits, the combination with said delivery and return conduits of means for by-passing said oil cooler, comprising a valve casing having a bore, said casing having a first inlet and outlet in communication with said bore and adapted to be connected in and form a part of said delivery conduit, said casing having a second inlet and outlet in communication with said bore and adapted to be connected into and form a part of, said return conduit, a plunger slidably mounted within the bore of said casing, means for positioning said plunger in one position whereby communication between said first inlet and outlet and said second inlet and outlet is established and communication between said first inlet and said second outlet is closed, *said means being operative in response to a pressure differential existing upstream of said first inlet and downstream of said first outlet* to move said plunger to a second position whereby communication between said first and second inlets and outlets respectively, is closed and communication between said first inlet and second outlet is established.

"10. In a pressurized lubricating system including an oil cooler having delivery and return conduits, the combination with said delivery and return conduits of means for by-passing said oil cooler comprising, a valve casing having a bore and first and second inlets and outlets adapted to be connected into said delivery

and return conduits respectively, said first and second inlets and outlets being in communication with each other through said bore, a plunger slidably mounted in said bore, said plunger being constructed and arranged to establish communication between said first and second inlets and outlets respectively, in a first predetermined position and to establish communication between said first inlet and said second outlet in a second predetermined position, *a first orific* in said delivery conduit upstream of said first inlet, *a second orifice* in said return conduit upstream of said second inlet, and *means responsive to the pressure differentials existing at said first and second orifices* to maintain said plunger in said first predetermined position or to move said plunger to said second predetermined position.

"15. In a pressurized lubricating system, the combination comprising an oil cooler, a delivery conduit for delivering oil to said oil cooler, a return conduit for returning oil from said oil cooler, said valve means for by-passing said oil cooler, said valve means comprising a casing, a bore in said casing, a first inlet and outlet communicating with said bore and connected in said delivery conduit to form a part thereof, a second inlet and outlet communicating with said bore and connected in said return conduit to form a part thereof, a plunger slidably mounted in said bore and constructed and arranged to afford, in one position thereof, communication between said first and second inlets and outlets whereby the oil passes through said delivery conduit, oil cooler and return conduit, and *means including an orifice in each of said inlets for moving said plunger to a second position* within said bore to thereby close communication between said first inlet and outlet and said second inlet

and outlet, and establish communication between said first inlet and second outlet whereby the oil by-passes said oil cooler."

The invention relates to a valve for automatically by-passing the oil radiator or cooler of an aircraft engine if leakage occurs in the cooler circuit and to the system employing the valve. Claim 8 is directed to the by-pass valve *per se* while claims 9, 10 and 15 are directed to the system including the valve. It seems clear, however, that any novelty in the system is dependent entirely on the valve. The system includes generally an oil sump, an oil pump, an oil cooler and a by-pass valve. In operation, the pump forces oil from the sump to the engine, then through a first fluid conduit in the by-pass valve, through the oil cooler, back through a second fluid conduit in the by-pass valve and back to the sump. The by-pass valve comprises a casing containing a longitudinal bore, a first inlet and outlet conduit and a second inlet and outlet conduit communicating with the bore and a plunger slidably mounted in the bore. Under normal operating conditions, when the by-pass valve is inoperative to by-pass the oil cooler, the plunger is so positioned in its casing that, while oil may pass through the first inlet and outlet and second inlet and outlet conduits, respectively (and consequently through the cooler), direct communication between the first inlet and second outlet conduits (i. e. by-passing) is closed. Restrictive orifices located in each of the inlet conduits create, when oil is forced past them, pressure differentials between the upstream and downstream sides thereof. Suitable communication is made from the upstream and downstream points adjacent each orifice to a second valve structure (a servo-valve) containing a piston so that the piston is balanced and held in normal position by the pressure differentials existing in the system under normal operating conditions. When a leak occurs in the oil cooler circuit, the pressure differential across the orifice in the second inlet conduit will be reduced, and this reduction will in turn unbalance the pressures maintaining the piston in the servo-valve in normal position. The piston will thus be moved by the unbalanced pressures and the plunger in the first valve, which is responsive to valving action produced by movement of the piston, will also be moved. The movement of the plunger will cut off communication between the first inlet and the first outlet and also between the second inlet and second outlet and, at the same time, establish direct communication between the first inlet and the second outlet, by-passing the oil cooler. The engine will thus continue to receive oil, notwithstanding the leak, and total loss of oil will be prevented. A combat plane could thus suffer damage to its oil cooler and associated plumbing without becoming a total loss.

The examiner had originally rejected appellant's combination claims as unpatentable over a reference showing the general combination on the ground they were drawn to an old combination. Appellant filed an affidavit under Pat.Off. Rules of Practice, Rule 131, 35 U.S.C.A. Appendix, which was accepted by the examiner, showing completion of the invention in this country prior to September 12, 1945, and thus swore back of the old combination reference. Subsequently, the examiner rejected the claims now on appeal on Jensen patent No. 2,509,504, issued May 30, 1950 (after appellant filed), on an application filed November 6, 1945, which was subsequent to appellant's invention date by two months. Appellant attempted to rely on the above affidavit to overcome the Jensen patent under Rule 131 but was refused by the examiner who maintained that since Jensen *claimed* the invention recited in the appealed claims, appellant could not proceed under Rule 131[1] but was re-

---

1. Patent Office Rule 131(a) provides in part that: "When any claim of an ap- plication is rejected on reference to a domestic patent which substantially

stricted to action under Rule 205 on the ground that he could make certain claims of Jensen for interference purposes.[2] The board agreed with the examiner that appellant could not swear back of Jensen and accordingly affirmed the examiner's rejection from which decision this appeal was taken.

The sole question before us is whether the Jensen patent claims "the rejected invention" as defined in the claims on appeal. If so, appellant can not swear back of Jensen under Rule 131; if not, he can.

The board's opinion indicates that it based its decision on the issue here solely on claim 11 of Jensen, though the opinion is not entirely clear in this regard. However, counsel for the Commissioner and for Teague have argued the case with reference only to claim 11 of Jensen and we will accordingly restrict our discussion of the issue to this claim. The issue, therefore, is narrowed to whether or not the claims on appeal are drawn to substantially the same invention as that defined by Jensen's claim 11 which reads as follows:

"In a flow control device: walls· defining a pair of fluid passages, each having an inlet portion and an outlet portion; means, including a port, interconnecting said passages; a valve controlling said port and having a first position whereat said port is closed, and a second position whereat said port is open and said valve closes one of said passages so that the fluid flow is from the inlet portion of one passage to the outlet portion of the other passage; yielding means urging said valve to the first position; a restricted orifice in each inlet portion of said passages; a servo-valve, said servo-valve being subjected to the differential of pressures across said orifices in such a manner that said valve is balanced by said pressures; yielding means urging the servo valve to an inoperative position, said servo valve being movable to another position upon unbalancing of said differential of pressures and when said servo-valve is in the last mentioned position fluid pressure is applied to the first mentioned valve to move same to its second position."

When one reads the disclosures of the Jensen patent and the Teague application, it is apparent at once that, in the broad aspect, these two inventors have disclosed only one invention. The indications are that each made the invention independently of the other in consequence of which the details of construction are dissimilar. By reason of the differences, Teague has his nine allowed claims which contain limitations distinguishing from the Jensen patent and, on the other hand, Jensen has several claims which Teague could not make for lack of supporting disclosure. These differing details are but parts of the same broad inventive concept and the claims before us are broad claims. Though it was evidently strenuously argued by

shows or describes *but does not claim* the rejected invention, * * * and the applicant shall make oath to facts showing a completion of the invention in this country before the filing date of the application on which the domestic patent issued, * * * then the patent * * * cited shall not bar the grant of a patent to the applicant * * *." (Emphasis added.)

2. Patent Office Rule 201(b) provides in part: " * * * interferences will also be declared between pending applications for patent, * * * and unexpired original or reissued patents, of different parties, *when such applications and patents contain claims for substantially the same invention * * *."* (Emphasis added.) Rule 205 provides for the copying of claims from a patent by an applicant in order to provoke an interference. Appellant has not done this, insisting the Jensen patent claims a different invention. His brief, however, proceeds on the assumption that the issue is whether he and Jensen claim "substantially the same subject matter" and that is the real issue.

Teague below that no Jensen claim could be read on his disclosure, the board held to the contrary, at least as to Jensen claim 11, and Teague has not argued this point before us. Conversely, the claims on appeal clearly read on the Jensen disclosure and Teague, whatever he may have done below, makes no serious contention before us to the contrary, except as to claim 8, a point discussed hereinafter. With this tacit admission of cross reading, the Jensen patent and the Teague application necessarily disclose common subject matter and since, as we have just said, there is only one broad invention, it is difficult to see how a broad claim in the Teague application can be to a different invention from a broad claim in Jensen's patent. But for the esoteric lore that has grown up around patent claims, that should end the controversy. When each of two inventors discloses the same invention and no other invention and sets out to claim it broadly without regard to differences of detail they are, perforce, claiming the same invention, regardless of the form of words employed.

We have, after careful study of appellant's arguments, come to the conclusion that the differences alleged to exist, as between the claims on appeal and what is claimed in claim 11 of the Jensen patent, are differences in words and not in substance and that, therefore, Jensen is claiming "the rejected invention" and his patent cannot be sworn back of under Rule 131. While an analysis of claims is a tedious undertaking, it seems to be the only feasible way to explain the basis for our ultimate conclusion. We find it convenient to commence with Teague's claim 10, perhaps the most detailed of those on appeal. We find that it differs from Jensen's claim 11 in the following general respects:

1. Claim 11 is directed to a flow control device, *per se* whereas claim 10 is directed to a pressurized lubricating *system*, including an oil cooler;

2. Claim 11 provides for yielding means urging the first valve to the first position whereas claim 10 merely provides for "a plunger slidably mounted in said bore, said plunger being constructed and arranged to establish communication between said first and second inlets and outlets respectively";

3. Claim 11 positively recites a "servo-valve" balanced by the differential of pressures across the orifices and "being movable to another position upon unbalancing of said differential of pressures" whereas claim 10 provides for "means responsive to the pressure differentials existing at said first and second orifices to maintain said plunger in said first predetermined position."

4. Claim 11 provides for "yielding means urging the servo-valve to an inoperative position" whereas claim 10 does not contain this limitation.

5. Claim 11 provides that when the servo-valve is in the second position, the first valve is moved to its second position by fluid pressure whereas claim 10 does not specifically recite what moves the plunger to its second position beyond saying it is a "means responsive to the pressure differentials."

We are of the opinion that despite these differences these claims are drawn to substantially the same invention. The claimed inventions operate in substantially the same manner to produce substantially the same result by substantially the same means.

There is no question but that there is a marked similarity between the inventions *disclosed* by appellant and Jensen respectively. Both are concerned with a by-pass valve for use in connection with oil circulating systems of engines such as are used in aircraft. Both utilize two valve structures, the second or servo-valve being responsive to a differential of pressures created by means of orifices located in the two inlet conduits to the first valve to effect a movement of the first valve which causes oil flow to by-pass the cooler. The differences between the two relate primarily to structural details.

As to the first point, that claim 10 embraces a *system* whereas Jensen's claim 11 covers only the by-pass valve *per se*, appellant draws our attention to the fact that his combination claims were originally rejected by the examiner on the ground of "old combination" and that it was not until he swore back of the reference applied for this rejection that his combination claims were not considered unpatentable on that ground. The fact that no reference was finally applied against appellant's combination claims to reject them on the ground of "old combination" does not mean that they are directed to an invention necessarily different from the by-pass valve *per se*. This merely obscures the issue. We hold that the claim to the system employing the by-pass valve is for the same invention as a claim to the valve because it would be obvious to utilize appellant's claimed by-pass valve in a cooling system, the very purpose for which it is primarily designed. The invention of the valve was the invention of the system.

Skipping to point 3, that Jensen refers to his second valve as a "servo-valve" and appellant uses "means" to cover the corresponding structure is immaterial. In each case the element is responsive to a differential of pressures across two orifices positioned in the two inlets and causes a movement of the first valve to a position whereby communication between the first inlet and second outlet is established. While Jensen is more specific in that he recites that, in one position, the servo-valve is "balanced" by the differential of pressures and that movement to the second position is caused by an unbalancing of the pressures, this recitation is clearly not directed to an invention different from appellant's broader recitation that the means are "responsive to the pressure differentials existing at said first and second orifices to maintain said plunger in said first predetermined position or to move said plunger to said second predetermined position."

It is true that this court has held, in a case involving estoppel to copy claims from a patent for interference purposes, In re Frey, 182 F.2d 184, 186, 37 C.C.P.A., Patents, 1052, that

" * * * in the use of the word 'covering' in the case of Cryns v. Musher, supra [161 F.2d 217, 34 C.C.P.A., Patents, 963], there was no intention to hold that a broad claim which merely covers the invention of a patent claim is a claim to substantially the same invention as the patent claim so as to avoid estoppel. * * * "

See also Emerson v. Beach, 215 F.2d 290, 42 C.C.P.A., Patents, 711, 717. While the issue involved in those cases is somewhat analogous to that involved in the instant case, we think it clear that in this case claim 10 is not a broad claim which "merely covers" the invention of Jensen's claim 11.

Nor do we think that the second, fourth and fifth differences direct these claims to different inventions. They are obvious expedients in the present context and do not go to the essence of what invention is claimed.

Claim 8, by comparison with claim 10, will be seen to differ in only two essential respects. First it is directed to a "by-pass valve means" rather than a system so that the first point of difference discussed above (as between claim 10 and Jensen's 11) is non-existent. We need say no more on this. The other difference is that instead of the "means responsive to the pressure differentials existing at said first and second orifices" to control the plunger position, claim 8 calls for "means responsive to flow through one of said inlet orifices," for the same purpose. While broader in scope, we are unable to say that claim 8 is not directed to the same invention as claim 10, which we have already said is directed to the same invention as claim 11 of Jensen. Claim 8 reads on a means which is responsive to flow through (pressure differentials at) two

orifices because flow through two includes flow through one. Claim 8 does not say "only one" and so it must be construed as meaning "at least one." That is the way we read it, though appellant apparently would have us do otherwise. In his brief Teague makes a very strenuous argument in an effort to show how claim 8 is to an entirely different invention than Jensen's claim 11. The main flaw in it is that it is based on a suppositious situation which is also entirely different from anything disclosed in Teague's application, which discloses no system or method of operation other than one in which response is to flow through both of the restricted orifices. All we wish to say further is that it has not escaped our notice that the hypothetical operation presented in an effort to show claim 8 is to a distinct invention assumes a preliminary closing of valve 86 which can happen only by response to the pressure differentials across two orifices and that further operation is produced by a different manually operated valve, thus defeating the whole purpose of the invention which is automatic operation.

Claim 9 is similar to claim 10 except that no limitation appears in the former as to the presence of orifices. In lieu thereof there is a broad recitation of

"* * * means being operative in response to a pressure differential existing upstream of said first inlet and downstream of said first outlet * * *"

Though no limitation as to the presence of orifices appears in this claim, the use of orifices in the field of fluid flow is a well-known expedient to create pressure differentials. And while the language of the quoted portion of this claim might conceivably be construed to be limited to a single pressure differential *between* a point upstream of the first inlet and downstream of the first outlet, the language used is indefinite and ambiguous enough to be reasonably construed to refer to *a* pressure differential upstream of the first inlet and *a* pressure differential downstream of the first outlet. In view of this ambiguity, the language should be interpreted in the light of appellant's disclosure. Cf. Neumair v. Malocsay, 77 F.2d 622, 22 C.C.P.A., Patents, 1349. When so construed, this claim is directed to substantially the same invention as is claim 11 of Jensen, for the other reasons set forth in discussing claim 10.

Appellant contends that in the second position of Jensen's valve, communication between the first and second inlets and outlets is *not* closed whereas in claim 9, this cutting-off of communication appears as a positive limitation. Appellant states in his brief that:

"* * * in the Jensen patent, there is provided the additional structure of a flap-valve * * * to close the cooler return conduit * * * while the "second inlet conduit" * * * of the Jensen improved by-pass valve is open through the Jensen structure * * * to the outlet * * *."

Appellant's argument in this regard is directed more towards form than towards substance. To restrict the inlet portion of Jensen's fluid passages to that portion of said passages on the downstream side of his flap-valves would be to ignore the real effect of his teachings. The flap-valve, of course, is not recited as a limitation in claim 11 and cannot be read into it to avoid the issue of priority.

Claim 15, while somewhat broader than claims 9 and 10, differs from claim 10 in only one respect. Instead of calling for means responsive to pressure differentials existing at orifices, it provides for

"* * * means including an orifice in each of said inlets for moving said plunger to a second position within said bore to thereby close communication between said first inlet and outlet, and establish

communication between said first inlet and second outlet * * *."

While there is no express limitation to the use of pressure differentials across the two orifices to cause movement of the plunger, we think that such a system is fairly to be implied from the language set forth above. Note that the claim recites, in effect, that each of the two orifices is utilized to move the plunger to its second position. As stated above, the use of orifices in the field of fluid flow is a well-known expedient to create pressure differentials and how else could orifices be used to move the plunger?

For the foregoing reasons the decision of the Board of Appeals is affirmed as to claims 8, 9, 10 and 15.

Affirmed.

O'CONNELL, J., was present at the hearing of this appeal, but, because of illness, did not participate in the decision.

JACKSON, J., retired, recalled to participate.

JOHNSON, Chief Judge (dissenting in part).

I concur in the conclusion reached by the majority except with respect to claim 8. That claim, as noted in the majority opinion, is broad enough to cover a system in which the position of the by-pass valve is controlled by the flow through a single orifice, as well as one in which it is controlled by flow through two orifices. Jensen's claim 11, on the other hand, is limited to a construction in which control is effected in accordance with the differential of pressures across two orifices.

It is apparent that appellant's claim 8 is much broader than Jensen's claim 11 and would cover structures differing radically from that to which the latter claim is limited. For example, claim 8

is readable on a system in which the movement of the valve is effected by exerting pressures from opposite sides of one of the orifices on opposite ends of the valve plunger and biasing the plunger by means of a spring assisting the pressure from the downstream side of the orifice, so that the valve will be held in normal operating position while the flow through the orifice is normal but will be shifted by the spring to by-passing position if there is a failure to flow through the orifice with a resultant equalization of the pressures on opposite sides of it. Clearly such a system would represent an invention entirely distinct from that of Jensen's claim 11.

The fact that a broad claim embraces the subject matter of a narrower one does not, in itself, establish that the two are drawn to the same invention, and this court has repeatedly so held. In re Frey, 182 F.2d 184, 37 C.C.P.A., Patents, 1052; Andrews v. Wickenden, 194 F.2d 729, 39 C.C.P.A., Patents, 860; Emerson v. Beach, 215 F.2d 290, 42 C.C.P.A., Patents, 711. As clearly indicated by those cases, a difference in scope alone, if great enough, may be sufficient to preclude a holding that two claims are drawn to the same invention. While it is not expressly stated in those decisions it appears to be implicit therein that two claims differing only in scope are not directed to the same invention if the narrower one involves one or more features involving invention over what is claimed in the broader one. Here it seems apparent that the mere broad concept of controlling the valve position by the flow through a single orifice, as recited in appellant's claim 8, would not in any way suggest the specific control by differential pressures across two orifices, to which Jensen's claim 11 is limited. The latter claim, therefore, includes an inventive feature not found in the former and hence the two are not drawn to the same invention.

In evaluating claim 8 the majority appear to have given substantial weight

to the fact that appellant does not actually disclose a system in which control of the valve is effected by one orifice only. In my opinion, that is not material here. Claim 8 is in no way ambiguous and must therefore be given the broadest interpretation it will reasonably support. In re Egan, 159 F.2d 452, 34 C.C.P.A., Patents, 843, and cases there cited. As was said in Graver Tank & Mfg. Co. v. Linde Air Products Co., 1949, 336 U.S. 271, 69 S.Ct. 535, 538, 93 L.Ed. 672, "It would accomplish little to require that claims be separately written if they are not to be separately read." See also In re Cresswell, 187 F.2d 632, 38 C.C.P.A., Patents, 917, and cases there cited. Claim 8, as conceded in the majority opinion, is broad enough to cover the control of the valve by one orifice alone, and the fact that appellant does not specifically disclose a single orifice control should have no bearing on the scope of that claim or on the question as to whether it is for the same invention as claim 11 of Jensen. The latter question should be determined by a comparison of the claims themselves rather than the specific disclosures on which they happen to be based.

It should be noted that the majority recognized, in connection with its consideration of claim 10, that this court has held, in a case involving estoppel to copy claims from a patent for interference purposes (In re Frey, supra), that

"* * * in the use of the word 'covering' in the case of Cryns v. Musher, supra [161 F.2d 217, 34 C.C.P.A., Patents, 963], there was no intention to hold that a broad claim which merely covers the invention of a patent claim is a claim to substantially the same invention as the patent claim so as to avoid estoppel. * * *"

The majority characterizes the issue in that and like cases as "somewhat analogous" to that here involved but con-cludes that "claim 10 is not a broad which 'merely covers' the invention of Jensen's claim 11." In the majority's consideration of claim 8, however, it completely ignores the rule set forth in the Frey case and, in fact, flies squarely in the teeth of that rule. When the majority states, as it does, that

"Claim 8 reads on a means which is responsive to flow through (pressure differentials at) two orifices because flow through two includes flow through one. Claim 8 does not say 'only one' and so it must be construed as meaning 'at least one.'"

it is, in fact, saying that because claim 8 "covers" Jensen's claim 11, it is drawn to the same invention.

I am of the opinion that the issue involved in the Frey case, supra, is more than merely "somewhat analogous" to that here involved; in essence, *there is no difference* between the two issues. In both cases, the question to be asked is: "are the claims drawn to substantially the same invention?" The ground rules that apply to one, therefore, should with equal force apply to the other.

Further to be noted is the fact that in In re Howard, 53 F.2d 896, 19 C.C.P.A., Patents, 759, this court approved the issuance of a patent to each of two inventors containing claims which differed only in scope, notwithstanding the fact that their disclosures were identical so far as the essential features claimed were concerned.

There is clearly nothing of record to show that the single-orifice control covered by appealed claim 8 is the equivalent, in patentable respects, of the specific two-orifice control to which Jensen's claim 11 is limited. In my opinion, therefore, Jensen does not claim the invention of appealed claim 8, and the decision of the board with respect to that claim should be reversed.