**Application of Phil H. HIDY and William F. Phillips.**

**Patent Appeal No. 6773.**

United States Court of Customs and Patent Appeals.
June 8, 1962.

---

Roger T. McLean, Adams, Forward & McLean, New York City (Henry W. Foulds, Jr., New York City, of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.*

SMITH, Judge.

Cycloserine, a water-soluble antibiotic is produced by bacterial cultivation on a nutrient medium. It is "amphoteric," by which is meant "a substance having both acid and basic properties." Hackh's

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge

Chemical Dictionary (3rd Ed.) Such a substance may act either as a weak acid or a weak base.

Appealed claims 2, 5, 6, 7 and 8 of appellants' application Ser. No. 487,704, filed Feb. 11, 1955, relate to the "Recovery of Cycloserine" from aqueous solutions. Claim 2 is representative of the appealed claims and reads as follows:

"A process for the recovery of cycloserine from an aqueous solution thereof which comprises adsorbing the antibiotic from the aqueous solution on a strongly acidic cation exchange resin in the hydrogen form, eluting the cycloserine from the resin with an aqueous solution of a base and adding to the resulting aqueous eluate a water-soluble salt of a metal capable of forming a water-insoluble salt of cycloserine, and removing precipitated water-insoluble metal salt of cycloserine from the supernatant."

The board affirmed the examiner's rejection of the claims as "unpatentable" over the following references:

Shull et al.    2,773,878    Dec. 11, 1956
Harned          2,789,983    Apr. 23, 1957

The two issues presented for our determination are: (1) Was the Harned reference properly relied upon by the examiner and the board in rejecting the claims, and (2) was the claimed invention properly rejected under 35 U.S.C. § 103.

Appellants' invention, as set forth in the appealed claims, relates to a process for the recovery of the antibiotic cycloserine from aqueous solutions thereof which includes the four steps of:

"(1) adsorbing cycloserine from an aqueous solution on a *cation* exchange resin in the hydrogen form,

"(2) eluting the antibiotic from the resin with a basic solution,

O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

"(3) precipitating the cycloserine as a water-insoluble metal salt by adding a water-soluble salt of a metal capable of forming a water-insoluble salt of cycloserine.

"(4) removing the precipitated salt of cycloserine from the supernatant."

The Shull et al. patent discloses the recovery of cycloserine from an aqueous solution by:

"(1) adsorbing cycloserine from an aqueous solution on a cation exchange resin in the hydrogen form,

"(2) eluting the antibiotic from the resin with a basic solution, and

"(3) recovering cycloserine from the eluate by any of a variety of steps, not including precipitation by metals, however."

Thus it may be seen that steps (1) and (2) in the Shull et al. patent are identical with appellants' steps (1) and (2).

The Harned patent discloses and claims in varying degrees of specificity a process for the recovery of cycloserine from aqueous solutions including each of the following eight steps, as recited in Harned's claim 2:

"(1) adsorbing cycloserine from an aqueous solution on an *anion* exchange resin in the hydroxide form,

"(2) eluting the antibiotic from the resin with an anion other than –OH,

"(3) precipitating the cycloserine as a water-insoluble metal salt by adding a water-soluble salt of a metal capable of forming a water-insoluble salt of cycloserine,

"(4) removing the precipitated salt of cycloserine from the supernatant,

"(5) slurrying the water-insoluble metal salt of cycloserine in water,

"(6) adding to the slurry an acid having an anion capable of preferentially forming a water-insoluble salt with the metal cation of the water-insoluble metal salt of cycloserine (formed in step 3),

"(7) removing the precipitated water-insoluble metal salt, and

"(8) recovering the cycloserine from the purified aqueous solution thereof."

Thus, it may be seen that steps (1) and (2) of the Harned process differ from appellants' process only in that Harned claims use of an *anion* exchange resin as opposed to appellants' *cation* exchange resin. Steps (3) and (4) of the patent are identical to those of appellant. Steps (5) through (8) of the patent merely continue the process of recovery of the cycloserine in removing the cation of the insoluble salt formed in step (3), leaving the cycloserine in purified aqueous solution, and removing it from the solution.

Resolution of the first issue, whether the Harned patent is properly available as a reference, requires us to determine whether the Harned patent *claims* the invention here claimed by appellants.

To eliminate Harned as a reference, appellants rely on affidavits filed pursuant to Patent Office Rule 131(a), 35 U.S.C.A.Appendix. This rule provides in pertinent part that:

"When any claim of an application is rejected on reference to a domestic patent which substantially shows or describes *but does not claim the rejected invention*, and the applicant shall make oath to facts showing a completion of the invention in this country before the filing date of the application on which the domestic patent issued, then the patent cited shall not bar the grant of a patent to the applicant." [Emphasis added.]

Appellants contend that the Harned patent does not "claim the rejected invention" and state that the claims "are drawn to a process including at least six steps and to the extent such claims are referred to by the board and Primary Examiner (claims 2 and 7 presumably), to an eight-step process," and that

Harned placed his emphasis on the details of recovery of the metal salt of the antibiotic, which details are not included in the appealed claims. The last four steps of the Harned process as recited in Harned's claim 2 are not called for by the appealed claims, as pointed out, supra.

Appellants also assert that since the Harned patent uses an *anion* exchange resin as opposed to appellants' use of a *cation* exchange resin, the claims of Harned do not include appellants' invention.

■ A Rule 131 affidavit is ineffective to overcome a United States patent, not only where there is a verbatim correspondence between claims of the application and of the patent, but also where there is no patentable distinction between the respective claims. In re Wagenhorst, 20 CCPA 829, 62 F.2d 831; In re Teague, 45 CCPA 877, 254 F.2d 145.

While the appealed claims do not recite the last four steps claimed by Harned, this difference is at best one of breadth or scope and is related to the cycloserine recovery. There is no basis in appellants' specification for assuming that appellants intend to use the cycloserine in the form of its water-insoluble metal salt. In carrying out their process, appellants disclose that they do not intend to end their process for the recovery of cycloserine with the performance of the last step of each of claims 2, 5, 6, 7 and 8, but that they intend to follow this with the identical additional procedure disclosed and claimed by Harned. Thus, appellants state in their specification:

"Following elution of cycloserine from the strongly acidic cation exchange resin, the cycloserine can be recovered from the concentrated eluate by any convenient method, such as, for example, by precipitating the cycloserine as a water-insoluble crystalline metal salt. Suitable metallic cations which form insoluble salts with cycloserine include silver, copper, mercury, zinc, lead, aluminum, and cobalt, and water-soluble salts of these metals can be added to the aqueous solution of the antibiotic and the antibiotic will precipitate as a salt of the metal employed. *The insoluble metal salt can then be removed from the supernatant by any convenient means such as by filtration, centrifugation, etc. The insoluble metal salt of cycloserine can then be slurried in water and a material added thereto capable of precipitating the metal ion as an insoluble salt thus liberating the cycloserine which goes into solution in the water present.* For example, *the silver salt of cycloserine* can be slurried in water and hydrochloric acid added thereto, the silver precipitating as silver chloride while the cycloserine goes into aqueous solution in the free acid form. *The cycloserine can then be recovered from the aqueous solution by freeze-drying under vacuum to obtain an amorphous preparation of very high purity or the cycloserine can be crystallized from the aqueous solution by adding to the solution a water-miscible solvent in which cycloserine is insoluble or only partially soluble.* Suitable water-miscible solvents which can be employed to crystallize cycloserine from aqueous solution include acetone, methanol, dioxane, etc." [Emphasis added.]

■ The board's rejection of the claims at bar amounts in effect to a holding that there is no patentable distinction between Harned's claims and the appealed claims; that is, that both sets of claims cover essentially the same invention. The claims at bar as well as Harned's claims 2, 6 and 7, are directed to ion-exchange treatment of cycloserine followed by recovery of the cycloserine from the eluate. The difference is that appellants' resin is limited in the claims to a resin of "the strongly acidic cation exchange" type and the adsorbed cycloserine is eluted therefrom by a base, while in Harned's claims 2, 6 and 7, cycloserine is adsorbed on "a strongly basic anion exchange resin" and is eluted therefrom with an anion other than −OH.

Appellants' claims and Harned's claims 2, 6 and 7 all relate to an ion exchange resin treatment for the recovery of cycloserine. The exact nature of such treatment differs only as to the selection of the particular ion exchange resin and the specific materials required to release the cycloserine therefrom.

Shull et al. and appellants' process both use a cation exchange resin. Hence, when Shull et al.'s disclosed ion exchange, (steps (1) and (2)), is substituted for that recited in Harned's claim 2, the sole differences between the claims at bar and the thus modified claim of Harned will relate to the pH limitations and the last four steps of Harned, which differentiate the respective sets of claims only as to scope of coverage, as pointed out, supra.

In In re Wagenhorst, 20 CCPA 829, 62 F.2d 831, various details of the claims in the application were not present in the reference patent's claim. Appellant had filed an affidavit under Rule 75, the predecessor of Rule 131, to overcome the reference. However, there as here, these details were taught by the prior art references. Despite the differences between the claims in issue and the reference patent, whose claims provided the basis of the rejection, this court held:

"We hold that the Putnam patent is a valid reference for all that it discloses. We further hold, for the reasons hereinafter stated, that there is no patentable distinction between the claims here in issue and the claims of the patent to Putnam, and therefore Putnam claims the invention here involved (62 F.2d p. 834)."

In In re Teague, 45 CCPA 877, 254 F. 2d 145, after considering differences in the details of the reference claims and the appellant's claims, this court held that the reference claims "the rejected invention" and stated:

"We are of the opinion that despite these differences these claims are drawn to substantially the same invention. The claimed inventions operate in substantially the same manner to produce substantially the same result by substantially the same means."

We hold, therefore, as to the first issue, Harned claims the only feature of appellants' claims which may be said to possess novelty over the Shull et al. reference. Thus Harned claims "the rejected invention" as this term is used in Rule 131 of the Patent Office Rules of Practice. The affidavits submitted cannot, therefore, be used to avoid the effect of Harned.

On the second issue, we do not find any patentable distinction between the appealed claims and Shull et al. in view of the Harned reference.

The appealed claims and claims 2, 6 and 7 of Harned are directed to a process for the recovery of cycloserine, which read on appellants' disclosure except for the specific ion exchange treatment specified by appellants and the specific pH limitations. These are disclosed in Shull et al.

We think one of ordinary skill in this art would know that an "amphoteric" material may be so treated as to be adsorbed either on an acid type cationic exchange resin as in Shull et al. or on a basic type anionic exchange resin as in Harned. The ion exchange phenomena exhibited by such resins is old and well known to those of ordinary skill in this art. So also, those of ordinary skill in this art would know the requirements of elution to remove the materials adsorbed on the resin selected. Thus it is thought to be well within the expected skill of the art to select the proper type of eluate to release the adsorbed cycloserine from either a cationic exchange resin or an anionic exchange resin.

Thus, to combine the resin of Shull et al. with the recovery step of Harned would seem to be an obvious expedient. The "amphoteric" character of cycloserine in water solution permits the choices made by Shull et al. and Harned as to the type of ion exchange resin to employ and this choice in turn determines the eluate to be used to free the adsorbed cycloserine from the resin.

Likewise we find nothing unobvious to one of ordinary skill in this art in utilizing a metal-salt precipitation for recovering the cycloserine from the eluate disclosed by Shull et al. In substance, it seems to us this is all the appealed claims cover. In either instance we think the process claimed would have been obvious to one of ordinary skill in this art at the time of appellants' invention (35 U.S.C. § 103). The rejection of the claims is, therefore, affirmed.

Affirmed.

RICH, J., did not sit or participate in decision.

MARTIN, J., sat but did not participate in decision because of illness.