59 CCPA

**Application of Homer E. CLARK, Jr.**
**Patent Appeal No. 8649.**

United States Court of Customs
and Patent Appeals.
April 13, 1972.

Ralph W. Kalish, St. Louis, Mo., atty. of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. John W. Dewhirst, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and ROSENSTEIN, Judge, United States Customs Court, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, affirming the rejection of claim 3 of appellant's application entitled "Shot Container for Shotgun Cartridges." [1] The remaining claims, 1, 2 and 4–6, have been allowed.

The invention relates to a composite, one-piece plastic wad column for disposi-

I. Serial No. 680,262 filed November 2, 1967 as a continuation of application serial No. 570,380 filed August 4, 1966, which in turn is a continuation of application serial No. 437,616 filed February 11, 1965, which in turn is a continuation of application serial No. 297,808 filed July 26, 1963.

tion within a shotgun cartridge. The wad column has an obturating[2] wad portion and a shot container portion as illustrated in Figs. 5-9:

FIG. 5  FIG. 6  FIG. 7  FIG. 8  FIG. 9

[A5645]

---

The shot container portion 23 of the wad column has a wall 22 with slits 24 and tabs 25 for easy breakability upon firing. The obturating wad portion 16 of the wad column has a compartment 20 with fin assembly 21 located therein. The fins 21 are relatively thin partition-like members and are free at their outer edges so that compartment 20, in effect, constitutes a continuous air cell. Upon firing, wad 18 will tend to buckle or bulge downwardly in its central portion, which will in turn tend to collapse fins 21. This will permit shot 26 to follow wad 18 and drop downwardly so that the shot 26 above shot container portion 23 will be received within wall 22 for containment and guidance by the shot container 23. Thus, compartment 20 provides a cushioning effect through its air cell character.

Claim 3 reads:

3. For use with a shotgun cartridge, a wad column comprising an elongated, cylindrical body, an obturating wad portion being provided at one end of said wad column, a relatively thin-walled shot container portion being provided in the other end portion of said wad column, the end of said shot container portion remote from said obturating wad portion being open, the end of said obturating wad portion remote from said shot container portion being closed and defining with adjacent body portion of said column an inner compartment normally continuous with the interior or [of?] the shot container portion, a wad seated within said wad column for defining the inner limit of the shot container portion and being in planar parallel relationship to the closed end of said obturating wad portion for completing enclosure of said compartment, a plurality of collapsible elements collectively having a mass less than the volume of said compartment for development of an air cell therein.

The examiner rejected claim 3 under 35 U.S.C. § 102 as anticipated by either

**2.** Webster's New International Dictionary, Second Edition (1954), defines "obturate" as "[t]o stop or close, as an opening; specif., * * * to stop (a gun breech) so as to prevent the escape of gas in firing."

Comerford I[3] or Comerford II.[4] Both Comerford patents disclose a one-piece plastic wad column (termed a "pouch-wad" by Comerford) having a shot-re-ceiving pouch portion and a middle (obturating) wad portion. Comerford's pouch-wad is best illustrated by Figs. 1 and 4 of Comerford II:

FIG.—1

FIG.—4

[A5646]

The pouch-wad is indicated as numeral 40, the shot container portion as 43, and the obturating wad portion as 42. Inside the compartment of the middle wad portion 42 is a center support structure 51 having a cylindrical center post 53 and a plurality of support walls (fins) 54. It is disclosed that this center sup-

---

3. U.S. Patent No. 3,266,421 issued August 16, 1966 on an application filed April 23, 1965 as a continuation of application serial No. 205,047 filed June 25, 1962.

4. U.S. Patent No. 3,269,311 issued August 30, 1966 on an application filed October 23, 1962.

port structure "gives [compresses] to cushion the thrust of the shot charge."

Appellant admits that both Comerford I and II clearly anticipate claim 3. However, several Rule 131 affidavits were submitted "swearing behind" the June 25, 1962 earliest effective filing date of these references. It is the effectiveness of these affidavits which is in issue here.

The examiner found the Rule 131 affidavits insufficient for a number of reasons. In the first place, although the examiner went on to consider the affidavits on their merits, he suggested that they were not seasonably filed. As to the merits, he concluded that the affidavits showed no actual reduction to practice since the one-piece wad column tested was made of a shot container and obturating wad glued together and was not an integral structure. It was the examiner's position that the testing showed that such wad columns were not practical because the breech pressure levels were unsafe. In addition, the examiner noted that there was no evidence of any activity from the date of this testing (April 1961) until the date of filing (July 1963). This, he felt, indicated either a lack of diligence or an abandonment of the invention.

The board affirmed the examiner's rejection. In regard to the reasons for finding the Rule 131 affidavits insufficient, the board stated that it "disagreed with the Examiner only on his contentions regarding abandonment of the invention." The board's reason for disagreeing with the examiner's finding of abandonment was that it felt the affidavits showed no conception or reduction to practice in the first place, and, therefore, there could be no abandonment. The board supported that conclusion by noting that the claims call for collapsible fins, whereas it believed that the affidavits showed conception and reduction to practice of a shot container having non-collapsible fins. It also found that the Rule 131 affidavits were insufficient because appellant could have made some of the claims of Comerford II.

As is apparent from the above review of the prosecution of the involved application, a large number of varied reasons have been given by the Patent Office for holding that appellant's Rule 131 affidavits are insufficient to overcome the Comerford patents. We are particularly concerned about the board's holding that appellant could have made some of the claims of Comerford II.

This court has previously held that a Rule 131 affidavit is ineffective to overcome a United States patent which has claims that do not differ materially from the rejected claims. In re Hidy, 303 F.2d 954, 49 CCPA 1152 (1962); In re Teague, 254 F.2d 145, 45 CCPA 877 (1958); In re Ward, 236 F.2d 428, 43 CCPA 1007 (1956). This follows from the language of Rule 131, which provides that an applicant may overcome by affidavit a rejection based on "a domestic patent which substantially shows or describes *but does not claim the rejected invention*" (emphasis ours), coupled with the phantom and modified count practice. In the prosecution of patent applications, this question often takes the form of whether the applicant can make one or more of the claims of the patent. See Manual of Patent Examining Procedure (M.P.E.P.) §§ 715, 715.05, and 1101.02(a).

By referring to appellant's ability to make some of the claims of Comerford II, the board apparently was implying that it considered Comerford II to be claiming the rejected invention, although the inquiry need not have been limited to appellant's ability to make the exact claims of Comerford. In re Hidy, supra; In re Teague, supra; In re Ward, supra. Our problem stems from the fact that the board was too terse when it said only:

It is also our opinion that the affidavits are ineffective under Rule 131 for their intended purpose because appellant could have made some of the claims of patent 3,269,311 [Comerford II].

The board did not explain which claim, or claims, of Comerford II it thought

appellant could make, nor did it elucidate any further as to why it thought appellant could make said claims. With regard to this finding, the board was in disagreement with the examiner,[5] therefore, we cannot look to the examiner's reasoning to support the Patent Office's position.

The solicitor, in his brief, attempts to fill in the blanks by pointing in particular to claims 1 and 6 of Comerford II, and then concluding that "[n]o reason is seen why appellant could not have made either of such claims." Appellant, in his brief, contends that he cannot make any of the claims of Comerford II because they all recite, in varying degrees of specificity, a center support structure having a cylindrical center post with fins extending radially therefrom; whereas appellant's disclosure is devoid of a center support *cylinder*. The solicitor is of the view that the support structure limitation in the Comerford II claims is met by the juncture of appellant's fins 21 (see Figs. 5 and 9), which he considers to be a generally cylindrical center post. While the arguments in the briefs approach the type of complete discussion needed before a fair determination of the issue can be made, we have not had the benefit of the examiner's or the board's views in that regard; therefore, we are reluctant to decide it on the basis of the briefs alone.

If Comerford II is in fact claiming the rejected invention and appellant could have copied one or more of the claims therein, or modified forms thereof, the Rule 131 affidavits are unacceptable and appellant should seek an interference with Comerford should he wish to continue claiming the rejected invention. Likewise, if an interference should have been instituted, then we are reluctant to decide the other issues in this case at the present time since our analysis of the conception, reduction to practice, diligence, and abandonment issues would most likely be an ex parte review of some of the priority proofs upon which appellant would no doubt rely. Because of the overriding importance of the issue we have been discussing, we remand for further clarification of the board's opinion in regard thereto. We simply are unable to make a fair determination of the issue on the record before us.

Accordingly, we *remand* this case to the board for clarification and for such further proceedings as may be necessary.

Remanded.

5. In his Answer, the examiner found that "Although the subject matter of the Comerford I and Comerford II patents is similar to that of the present application, it is not believed that the appellant can copy any of the claims in the patents for the purposes of interference."