**In re Neil L. BROWN.**
**Patent Appeal No. 8726.**

United States Court of Customs
and Patent Appeals.

June 22, 1972.

George F. Smyth, Smyth, Roston &
Pavitt, Los Angeles, Cal., attorneys of
record, for appellant.

S. Wm. Cochran, Washington, D. C.,
for the Commissioner of Patents. Jere
W. Sears, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN
and LANE, Judges, and CLARK, Justice
(Ret.) United States Supreme Court,
sitting by designation.

BALDWIN, Judge.

This appeal is from the decision of
the Patent Office Board of Appeals
which affirmed the examiner's rejection
of claims 15, 18, 19, 20, 24, 25, 27 and 28
of appellant's application[1] in which cer-
tain other claims were allowed. Claim
15 is no longer involved since the appeal
as to it stands dismissed on an unop-
posed motion of the Commissioner of
Patents. A renewed motion of the Com-
missioner to dismiss the appeal as to
claim 27, opposed by appellant, is before
us.

### The Invention

The invention relates to a transducer
system for measuring variations in ca-
pacitance of a variable electrical capaci-
tor or sensor, which capacitance is var-

---

1. Serial No. 501,731, filed October 22, 1965.

ied with changes in a parameter (temperature, pressure, force, etc.) to be measured. Figure 1 of the application appears below:

Fig.1

[A5967]

Capacitor 10 is the sensor, described as having its capacitance $C_s$ varied through relative movement between the capacitor plates under control of the parameter being measured. A reference capacitor 16, having fixed capacitance $C_r$, is connected in series between one terminal 22 of an alternating current source $E_{in}$ and one input terminal lead 28 of an operational amplifier 26. A second terminal of source $E_{in}$ is connected to reference lead 24, which engages the other input terminal of the amplifier and passes through it to form one of its output leads. Sensor capacitor 10 is connected between the input lead 28 and a second output lead 30 of the amplifier. Symbols for capacitors shown in dotted lines at 50, 52, 54, 55, 56 and 57 do not represent tangible elements added to the circuit but indicate, in lumped form, various undesirable stray capacitance effects which may inherently tend to exist in the system. Shielding 60 is provided about capacitors 10 and 16 and connected to reference lead 24 at 62 to reduce stray capacitance effects (represented at 50 and 52) that are effectively in parallel with the capacitors. The operational amplifier 26 is described as having very high gain, high input impedance, and low output impedance. It is so connected with the other elements in the system that the stray capacitance effects represented by the other symbols 54–57 are minimized. The output terminals 24 and 30 of the amplifier are connected to a readout circuit including a resistance network 34, 36, 40 for obtaining a zero voltage reading at terminals 32, 24 for a selected value of the parameter $C_s$.

In operation, input voltage $E_{in}$ energizes the circuit and capacitance $C_s$ of capacitor 10 varies with the parameter being measured to cause variations in the output voltage $e_o$ of the amplifier. Appellant demonstrates that, with the amplifier characteristics selected in accordance with his teaching so that practically no current flows through it, the capacitance of the sensor capacitor, $C_s$, may be calculated from the relationship:

$$\frac{e_o}{E_{in}} = -\frac{C_r}{C_s}$$

Claims 18 and 25 are representative:

18. In combination for providing an indication of variations in a parameter,

means for providing an input voltage,

an operational amplifier having a high input impedance and a low output impedance,

a first capacitor having first and second plates variably positioned relative to each other,

means for providing variations in the relative positioning of the first and second plates in the first capacitor in accordance with the variations in the parameter,

a second capacitor for providing a reference value,

means connecting the first and second capacitors and the voltage means and the operational amplifiers [sic] in a circuit relationship for providing from the operational amplifier an output voltage having a value dependent only upon the input voltage and the relative values of the first and second capacitors.

25. In combination for measuring a parameter,

a variable capacitor having first and second plates movable relative to each other in such manner as to vary the capacitance of the variable capacitor,

means for imparting motion whereby the first and second plates of the variable capacitor move relative to each other in response to the change in the parameter to be measured by the variable capacitor,

a reference capacitor coupled in series with the variable capacitor,

a high-grain amplifier coupled in parallel with a particular one of the variable and reference capacitors and in series with the other one of the variable and reference capacitors,

means for introducing an input voltage to the other one of the input and reference capacitors to obtain the production by the high-gain amplifier of an output voltage dependent upon the input voltage and the relative values of the variable and reference capacitors, and

means for measuring the output voltage from the high-gain amplifier to provide an indication of the relative values of the reference and variable capacitors in accordance with the relative values of the input and output voltages.

Claim 19 adds a recitation of "means shielding the first and second capacitors" to claim 18 and claim 20 adds circuit details to claim 19. Claims 24 and 28 are similar to claim 25, with claim 24 reciting a readout device sensing the "ratio" between values of the reference and variable capacitors "in accordance with" the relative values of the input and output voltages of the amplifier and claim 28, like claim 19, reciting shielding means.

Claim 27 defines a capacitance measuring system in terms of high and low impedance means without reciting an amplifier.

### The References

Johnson [2] discloses capacitance type transducer systems of which Figure 1 is an example:

Fig. 1.

[A5966]

A sensor capacitor, having a capacitance C is connected in series with an alternating current source 7 across input terminals 4, 3, of a high-gain amplifier 1. Capacitance C varies with changes in dielectric constant of a liquid disposed between its plates, in response to a change in the parameter being measur-

2. U.S. Patent No. 2,908,166, granted October 13, 1959.

ed. A standard capacitor having capacitance E is connected to C and terminal 4 at one end and at the other end to an output terminal 6 of the amplifier. Terminal 3 connects directly to a second output terminal 5 of the amplifier and output voltage V is applied to a meter 2. Capacitor E serves as a negative feedback circuit with the system attaining "a condition in which the input to the amplifier 1 is substantially zero" and the amplifier output voltage is proportional to C, whereby C = VE.

Samuelian[3] discloses similar capacitance type transducer systems. Its most pertinent circuit differs from Johnson primarily in that two fixed capacitances are employed along with the sensor capacitor and the output voltage of the high gain amplifier varies with the ratio of a variable component of the sensor capacitance to its maximum capacitance change.

Wolfe[4] relates to a capacitance type transducer system which differs from Johnson and Samuelian in certain particulars. First, the sensor capacitor is varied in capacitance by relative movement between its plates rather than by changing the characteristics of the dielectric. Also, the measuring circuit does not involve connecting a sensor or reference capacitor in a feedback circuit of an amplifier. Wolfe additionally employs a grounded casing.

Storm[5] discloses a capacitance type transducer system wherein shielding is provided about a sensor capacitor and connected to circuit ground to avoid stray capacitance effects.

### The Rejection

The examiner rejected all of claims 18, 19, 20, 24, 25 and 28 under 35 U.S.C. § 103—claim 18 on Samuelian and Wolfe, claims 19 and 20 as claim 18 further considered with Storm, and claims 24, 25 and 28 on either Samuelian or Johnson considered with Wolfe. In affirming those rejections, the board considered Johnson as an alternative to Samuelian as a basic reference for claims 18, 19 and 20 as well as claims 24, 25 and 28. Wolfe was considered to show that it was obvious to substitute a sensor capacitor having relatively movable plates in the basic reference. Storm was relied on to teach shielding of capacitors to avoid stray capacitance effects.

The rejection of claim 27 is dealt with below.

### Opinion

Considering Johnson as the basic reference in connection with claims 18, 19, 20, 24, 25 and 28, we note that appellant does not question that it would have been obvious to replace the sensor capacitor therein with a sensor having relatively movable plates as in Wolfe. Nor can he seriously question that Johnson meets the requirements of claims 18, 24 and 25, which do not recite shielding, as to the circuit connections between the amplifier and the capacitors.

What appellant does particularly rely on is a statement Johnson makes with respect to its Figure 1 system as follows:

> The arrangement as it stands is not of great practical use, as it does not enable the effects of stray capacitances to be removed.

Appellant argues that his invention represents a simple solution to the problem of reducing stray capacitance effects in capacitance bridge circuits whereas Johnson, in other embodiments, discloses more complex arrangements for that purpose. Appellant points specifically to his use of "an operational amplifier having high input impedance and low output impedance and having a high

3. U.S. Patent No. 3,221,247, granted November 30, 1965, on an application filed February 8, 1963.

4. U.S. Patent No. 2,655,043, granted October 13, 1953, to Wolfe et al.

5. U.S. Patent No. 2,431,841, granted December 2, 1947.

gain" as eliminating certain of the stray capacitance effects (54–57 in Fig. 1, *supra*) with the capacitor shielding eliminating the other effects (50 and 52).

However, the record is not convincing that the circuit as defined by the claims presently under consideration has any greater practical utility than Johnson's. Johnson states that his amplifier has "high gain" and "negative feedback, whereby the net input to the amplifier is maintained substantially zero and the amplifier output varies substantially linearly with the ratio of the first and impedances" (capacitances). Observing that "the input impedance of an amplifier is the ratio of the applied voltage to the grid-cathode current" and that "the effect of negative voltage feedback is to decrease the output impedance of the amplifier," the board concluded that Johnson's negative feedback amplifier (also Samuelian's) meets the claim requirements of "high input impedance and low output impedance." The solicitor further supports the conclusion of the board by pointing out that, "[s]ince the input impedance of an amplifier is the ratio of the applied voltage to the grid-cathode current, zero input current [in Johnson] occasions infinite input impedance." Further, he reasons that the presence of an output current susceptible of measurement in Johnson "necessarily connotes 'a high input impedance and a low output impedance.'"

The examiner found the term "operational," applied to the amplifier in claims 18 and 28, not to impart any "structural or patentable" limitation because "an operational amplifier is merely a high-gain direct-coupled amplifier designed for stability and freedom from drift." In support of that position, the solicitor pointed out that the examiner's definition of "operational amplifier" corresponds substantially to that in J. Markus, Electronics and Nucleonics Dic-

tionary 445 (3d ed.1966), and that other authority gives the term even broader meaning.

■ For those reasons, the record satisfies us that claims 18, 24 and 25 are couched so broadly as to be met by Johnson when modified by the undeniably obvious substitution of a sensor capacitor with relatively movable plates as disclosed by Wolfe. Any difference in appellant's system that may eliminate stray capacitance effects not eliminated by the Johnson circuit must therefore require some particular amplifier or circuit characteristics or operating conditions which, though apparently disclosed in appellant's application,[6] are not recited in these claims.

The only difference in claims 19, 20 and 28 requiring discussion is the recitation of shielding means for the capacitors. Addition of such means to Johnson must be considered obvious from the secondary references, Storm in particular and also Wolfe, there being nothing in the record which demonstrates that such shielding would not be effective in the Johnson Figure 1 system. The rejection of claims 18, 19, 20, 24, 25 and 28 using Johnson as the basic reference will therefore be sustained and we find no occasion to discuss the similar grounds of rejection using Samuelian.

With regard to claim 27, the examiner rejected that claim "under 35 U.S.C. § 102 as anticipated by Wolfe et al." In his answer, he specifically applied the terms of the claim to the Wolfe reference. The board, while generally stating at the opening of its opinion that it was "in accord with the position of the examiner," never mentioned the rejection of claim 27 under section 102. Its only holding with respect to that claim appears in statements that claims 24, 25, 27 and 28 are "found to involve only obvious modifications of the prior art for

6. For example, the application discloses that the amplifier may have an open loop gain of $5 \times 10^7$, with the input currents rarely exceeding $10^{-10}$ amperes and input voltage of $2 \times 10^{-6}$ volts. The terminal 28 is said to be effectively at ground, being held within 2uv thereof. In his brief, appellant emphasizes these conditions and that the amplifier provides a "very" high gain.

the reasons stated by the Examiner in his Answer" and that:

> Accordingly, we will sustain the rejection of these claims under 35 U.S.C. 103.

In a reply brief before the board, appellant set forth express reasons why he disagreed with the examiner's application of the claim to Wolfe under section 102. The board made no comment on either opposing view. Claim 27 differs from claims 24, 25 and 28 in lacking the recitation of an amplifier and in other possibly significant respects, and it is therefore not clear how the board may have considered the examiner's rejection of those other claims under section 103 applicable to claim 27. We conclude that the basis for the rejection of claim 27 by the Patent Office is unclear. While appellant's failure to request clarification of the board's decision might suggest that he understood its position, his brief here really does nothing to clarify the situation.

Since appellant's brief at least indicates that he did not abandon the appeal as to claim 27, the Commissioner's motion to dismiss, which seems to be based primarily on the premise that he did, is denied. However, in view of the fact that the record is in no condition for proper review of the rejection of claim 27, the appeal is remanded to the Patent Office for clarification of the board's decision as to that claim. See In re Chilowsky, 229 F.2d 457, 463, 43 CCPA 775, 784 (1956); In re Wheeling, 413 F.2d 1187, 1195, 56 CCPA 1429, 1438 (1969); In re Clark, 457 F.2d 1004, 1008, 59 CCPA (1972).

In summary, the appeal has been dismissed as to claim 15, the decision of the board is affirmed as to claims 18, 19, 20, 24, 25 and 28, and the appeal is remanded to the Patent Office as to claim 27 for further proceedings consistent with this opinion.

Affirmed in part and remanded.